UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| v. | ) |  |
|  | ) | 2:18-cr-00040-JDL-01 |
| LAMALE LAWSON, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**ORDER ON DEFENDANT'S MOTION TO SUPPRESS**

Defendant Lamale Lawson is charged with possessing a firearm as a felon, in violation of 18 U.S.C.A. §§ 922(g)(1) and 924(a) (2018). Lawson has moved to suppress all evidence obtained when agents from the Maine Drug Enforcement Agency ("MDEA") searched a bedroom closet in the apartment of his girlfriend, "N.N." (ECF No. 15). For the reasons that follow, I deny the motion.

## I. FACTUAL BACKGROUND

In March 2016, Special Agent Josh McDonald, of the MDEA, began investigating Lawson's alleged involvement in trafficking drugs and firearms. *See* ECF No. 16 at 1. Special Agent McDonald and other agents learned that Lawson would occasionally stay at N.N.'s apartment, and agents made two controlled purchases of heroin from Lawson at N.N.'s housing complex. Special Agent McDonald also learned that Lawson would use N.N.'s vehicle in the course of his alleged drug trafficking. After obtaining a search warrant for the location data associated with Lawson's cell phone, Special Agent McDonald confirmed that Lawson

had taken N.N.'s car to New York in late July 2016. *See id.* at 1-2. Using the same location data, on July 31, 2016, MDEA agents intercepted Lawson in the same vehicle, driving northbound in Maine. *See id.* at 2. Although a search of Lawson and the vehicle revealed no drugs, Lawson was arrested that day on state drug trafficking charges based on the prior controlled purchases, as well as a federal charge as a felon in possession of a firearm.

Also on July 31, Special Agent McDonald and two other officers spoke with N.N. at her apartment. *See id.* N.N. told the agents that Lawson stayed with her and kept some of his property in her apartment, and she then signed a written consent form that granted the agents permission to search her entire bedroom. *See id.*; *see also* ECF No. 15 at 2. She took the agents to her bedroom, which had two closets with sliding doors. *See* ECF No. 16 at 2, July 27 Hearing Tr. at 16:18-18:13. N.N. pointed to the left-side closet and, as testified to by Special Agent McDonald, said "that's where he [keeps] his stuff." Tr. at 22:6-22:9. Special Agent McDonald slid open the unlocked closet door, shined a flashlight on the floor, and immediately recognized a gun case. *See id.* at 23:5-23:23. Special Agent McDonald observed that the case was slightly open, and what appeared to be a silver handgun was visible. *See id.* at 24:12-24:20. N.N. told the agents that she did not know the gun was in the closet. *See id.* at 25:25-26-2.

After the agents discovered the gun, N.N. pointed them towards a safe, which was located under her bed, and told them that it belonged to Lawson. *See* ECF No. 16 at 2. She told the agents that "if he [Lawson] had drugs, they would be in the

safe." *Id.* at 2-3; *see also* Tr. at 27:4-27:7. Special Agent McDonald then bent down and visually confirmed that there was a safe under the bed. *See* Tr. at 26:18-26:22.

After discovering the handgun and safe in N.N.'s bedroom, the agents applied for and obtained a search warrant, which was issued by a Judge of the State of Maine District Court.

## II. LEGAL ARGUMENT

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Lawson argues that the warrantless closet search was unreasonable. It follows, Lawson contends, that both the evidence discovered during the initial closet search, and the search that followed the issuance of the search warrant (which was supported in part by the evidence discovered during the initial search) must be suppressed.[1]

"[U]nder the Fourth and Fourteenth Amendments [] a search conducted without a warrant issued upon probable cause is *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973) (internal quotation marks omitted and emphasis added). It is "well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Id.* Thus, officers do not need a search warrant

---

[1] Lawson represents that the property seized during the search conducted pursuant to the warrant included two handguns, ammunition, mail addressed to Lawson, the safe and its contents, mobile telephones, a smart watch, credit cards, and plastic bags. *See* ECF No. 15 at 3. The record, however, contains no evidence beyond Lawson's representations with respect to the property seized during the search.

3

when a person with the authority to consent does so freely and voluntarily. *See United States v. Jones,* 523 F.3d 31, 37 (1st Cir. 2008).

Lawson's argument proceeds in three ways: First, he argues that N.N. lacked apparent authority over the closet in which he kept his personal property; second, he argues that even if N.N. did have apparent authority, the closet was outside of the scope of the search that she had consented to; and third, he argues that if the fruits of the closet search are suppressed and thus excised from the warrant affidavit, the mere presence of a safe in N.N.'s bedroom, along with her statement indicating that if Lawson had drugs, he would keep them in the safe, were insufficient grounds for issuing a warrant. I consider each argument and conclude that the officers acted within the scope of the consent they obtained from N.N., who was a person with authority over the searched area. Accordingly, I need not and do not reach Lawson's argument with respect to whether the search warrant would have issued in the absence of evidence obtained during the initial closet search.

## A.     Apparent Authority

"[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *United States v. Matlock,* 415 U.S. 164, 170 (1974). Here, the parties agree that N.N. was the lessor of the apartment, and the officers were aware of that fact. They further agree that N.N. signed a written consent form permitting officers to search her entire bedroom, which is where the relevant closet was located. *See* ECF No. 16 at 2; *see also* ECF No. 15 at 2.

"As with other factual determinations bearing upon search and seizure, determination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990) (internal quotation marks omitted). Common authority exists where people mutually use a property and generally have joint access or control of the area. *United States v. Meada*, 408 F.3d 14, 21 (1st Cir. 2005).

Here, at the time of the warrantless search, the agents reasonably understood that Lawson and N.N. were a couple and they shared things, including the use of her apartment and car. Although Lawson contends that the bedroom's left-side closet was his alone, at the time of the search N.N. indicated only that it was the location in her bedroom where "he [kept] his things." And, regardless of whether N.N. kept any of her own items in the left-side closet, there is no evidence that should have caused the officers to conclude that N.N. was prohibited from accessing or using the closet. The evidence establishes that N.N. possessed no less than common authority over the use of, and access to, the left-side closet in her bedroom. Thus, N.N. had the authority to consent to a search of the closet.

**B.   Scope of Consent**

After officers have obtained consent to search a property, a warrantless search may not "exceed the scope of the consent granted." *United States v. Chaney*, 647 F.3d 401, 405–06 (1st Cir. 2011). N.N. signed a written consent form permitting the officers to search her entire bedroom. Moreover, once the officers were in her

bedroom, N.N. herself pointed them to the closet by volunteering that Lawson kept personal items there. "The scope of the consented-to search is generally defined by the expressed object of the search, which is measured by a test of objective reasonableness: what would the typical reasonable person have understood by the exchange between the officer and subject?" *Id.* (internal quotation marks omitted). Given that N.N. expressly pointed the officers to the closet, and the closet was within and part of N.N.'s bedroom, it was objectively reasonable for the officers to treat the closet as within the scope of N.N.'s consent.

### III. CONCLUSION

Because the agents acted within the scope of the consent they obtained from a person with authority over the searched area, Lawson's Motion to Suppress (ECF No. 15) is **DENIED**.

**SO ORDERED.**

**Dated this the 15th day of August, 2018.**

                                                                              /s/ **JON D. LEVY**
                                                                               **U.S. DISTRICT JUDGE**